1  **FARUQI & FARUQI, LLP**
   Benjamin Heikali (State Bar No. 307466)
2  *bheikali@faruqilaw.com*
   Joshua Nassir (State Bar No. 318344)
3  *jnassir@faruqilaw.com*
   10866 Wilshire Boulevard, Suite 1470
4  Los Angeles, California 90024
   Telephone: (424) 256-2884
5  Facsimile: (424) 256-2885

6  **REESE LLP**
   Michael R. Reese (State Bar No. 206773)
7  *mreese@reesellp.com*
   Sue J. Nam (State Bar No. 206729)
8  *snam@reesellp.com*
   100 West 93rd Street, 16th Floor
9  New York, New York 10025
   Telephone: (212) 643-0500
10 Facsimile: (212) 253-4272

11 - and -

12 George V. Granade (State Bar No. 316050)
   *ggranade@reesellp.com*
13 8484 Wilshire Boulevard, Suite 515
   Los Angeles, California 90211
14 Telephone: (212) 643-0500
   Facsimile: (212) 253-4272

15

16 *Counsel for Plaintiff Dennis Culver*
   *and the Proposed Class*

17

18              **UNITED STATES DISTRICT COURT**
19             **CENTRAL DISTRICT OF CALIFORNIA**
                    **WESTERN DIVISION**
20

| | |
|---|---|
| 21  DENNIS CULVER, individually and on behalf of all others similarly situated, | Case No. 2:19-cv-09263 |
| 22 | **CLASS ACTION COMPLAINT** |
| 23 | **DEMAND FOR JURY TRIAL** |
| 24         Plaintiff, | |
| 25     v. | |
| 26  UNILEVER UNITED STATES, INC., | |
| 27         Defendant. | |
| 28 | |

Plaintiff Dennis Culver ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), brings this Class Action Complaint against Defendant Unilever United States, Inc. ("Unilever" or "Defendant"), and respectfully alleges as follows. Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, him. As to all other matters, he bases his allegations on information and belief, through investigation of his counsel. Plaintiff believes substantial evidentiary support exists for the allegations below and seeks a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      Plaintiff brings this consumer protection and false advertising class action lawsuit against Defendant, based on Defendant's deceptive business practices with respect to the sale of its "Maille" brand mustard products that, even though appear to be made in France, are not from France (collectively, the "Products").

2.      At all relevant times, Unilever has systematically marketed and sold the "Maille" brand mustard Products with labeling, packaging, and advertising that indicate the Products are made in France, such that any United States consumer who purchased the Products, or who purchases the Products today or in the future, is exposed to Defendant's uniform representations indicating that the Products are made in France.

3.      Each of the Product labels bear references to France and makes use of the French language.

4.      For example, the label of Maille Old Style Mustard, which is actually made in Canada, bears the following representations: "Paris," a Paris emblem, "Depuis 1747," and "Que Maille."

5.      Based on these representations, consumers reasonably believe the Products are made in France. The Products' labeling, packaging, and marketing led Plaintiff and the Class members to reasonably believe they were purchasing mustard that was made in France.

6.      A recent, independently conducted online survey by a market research company (the "Survey") confirmed that consumers are being deceived. The Survey was conducted among a demographically representative sample of over 400 U.S. consumers who purchased mustard products prior to the Survey. As part of the Survey, among other tasks, respondents were shown the principal display panel of the Maille Dijon Originale mustard product and were asked "Based on the label of the product, where do you believe the product is made?" To respond, respondents were given a drop down list of 21 countries, including France, Canada, and the U.S., as well as the option to select "None of the above" or "I am not sure." Based on this question, 63% of respondents chose France as the location they believe the Product is made in.

7.      In reality, the Products are not made in France, but instead are made in Canada.

8.      Thus, Defendant misleads, deceives, and confuses reasonable consumers, including Plaintiff and the Class members, by portraying the Products as being made in France, when in fact they are made in Canada.

9.      Defendant's conduct harms consumers by inducing them to purchase the Products at a premium price on the false premise that the Products are made in France (as they are in fact made in Canada), when the consumers would not have otherwise purchased the Products, or would have paid substantially less for them had they known the truth.

10.     Plaintiff now brings this action individually and on behalf of the members of the proposed Class (defined *infra*) to stop Unilever's unlawful practices, seeking injunctive and monetary relief and such additional relief as the Court may deem just and proper.

**JURISDICTION AND VENUE**

**Jurisdiction**

11.    Pursuant to Local Rule 8-1, Plaintiff states that this Court has original subject matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code), under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).   Because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and New Jersey, at least one member of the plaintiff class is a citizen of a State different from Defendant. Furthermore, Plaintiff alleges the matter in controversy is well in excess of $5,000,000 in the aggregate, exclusive of interest and costs. Finally, Plaintiff alleges "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100.  *See* 28 U.S.C. § 1332(d)(5)(B).

12.    This Court has personal jurisdiction over Unilever because Unilever has sufficient minimum contacts with the State of California, and/or otherwise intentionally avails itself of the markets in the State of California through the promotion, marketing, and sale of the "Maille" brand mustard products in this State to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Furthermore, Plaintiff's claims arise out of Defendant's conduct within California, including Defendant's conduct of disseminating in California false and misleading representations indicating that the "Maille" brand mustard products at issue are made in France, when in fact they are made in Canada.

**Venue**

13.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2)

1  because a substantial part of the events or omissions giving rise to Plaintiff's claims

2  occurred within this District, including Plaintiff's purchase of the Product based on

3  Defendant's dissemination of false and misleading information about the geographic

4  origin of the Products.

5  **PARTIES**

6  **Plaintiff Dennis Culver**

7  14.    Plaintiff Dennis Culver is a citizen of California and resides in

8  Carpinteria, California, in Santa Barbara County.

9  15.    Plaintiff purchased the Maille Old Style Mustard Product and the

10  Maille Traditional Dijon Originale Mustard Product in 2018 and 2019 from the

11  following locations: Costco in Oxnard, California; Costco in Goleta, California; and

12  Albertsons in Carpinteria, California.

13  16.    Plaintiff last purchased the Products in or around February 2019.

14  17.    The labeling and marketing of the Products Plaintiff purchased

15  contained references to Paris and France and made use of the French language. For

16  example, the Maille Traditional Dijon Originale Mustard Product contained the

17  following representations: "Paris," a Paris emblem, and "Depuis 1747." The Maille

18  Old Style Mustard Product contained the following representations: "Paris," a Paris

19  emblem, "Depuis 1747," and "Que Maille."

20  18.    Based on these references to Paris and France and the use of the French

21  language on the labels of the Products purchased, Plaintiff reasonably believed the

22  Products he purchased were made in France.

23  19.    Plaintiff paid for Products that were made in France but received

24  Products that were made in Canada.

25  20.    Plaintiff would not have purchased the Products or would have paid

26  less for the Products had he known they were in fact made in Canada.

27  21.    The Products that Plaintiff received were worth less than the Products

28  for which he paid. Plaintiff was injured in fact and lost money as a result of

1    Defendant's improper conduct.

2        22.   If Plaintiff knew the Product labels were truthful and non-misleading,

3    he would likely continue to purchase the Products in the future. At present, however,

4    Plaintiff cannot be confident that the labeling of the Products is, and will be, truthful

5    and non-misleading. In addition, Class members will continue to purchase the

6    Products, reasonably but incorrectly believing that they are made in France.

7                    **Defendant Unilever United States, Inc.**

8        23.   Defendant Unilever United States, Inc., is a corporation organized

9    under the laws of Delaware.

10       24.   Unilever United States, Inc.'s principal executive office is located at

11   700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.  SEC'Y OF STATE, STATE

12   OF CAL., *Statement of Information (Foreign Corporation): Unilever United States,*

13   *Inc.* (Feb. 28, 2019), *available at* http://bit.ly/2Zl8FkB (last visited Oct 28, 2019).

14                **ALLEGATIONS COMMON TO ALL CLAIMS**

15       25.   France is world famous for its food, including its mustards, which have

16   been popular and renowned there for over 1500 years.   Indeed, in 1390, the French

17   government issued regulations for the manufacture of mustard, decreeing that it

18   contain nothing more than "good seed and suitable vinegar." In the 13th century,

19   Pope John XXII of Avignon, France was so fond of mustard that he created a new

20   papal position in France – *grand moutardier du pape* (mustard-maker to the pope).

21   *See*      https://www.thegoodlifefrance.com/the-history-of-mustard-in-france/(last

22   visited Oct 28, 2019).

23       26.   "Maille" is a brand of mustards, salad dressings, oils, and other

24   products that originated in France in the 1700s.

25       27.   In 1747, Antoine-Claude Maille became a sudden celebrity, which

26   enabled him to successfully market and sell a range of aromatic mustards. That year,

27   he opened his first boutique in Paris and became official supplier to the court of King

28   Louis XV.  *Our Story*, US.MAILLE.COM (2019), https://us.maille.com/pages/our-

story /(last visited Oct 28, 2019) (click top arrow on right side of screen three times).

28.    In 1845, the Maille boutique at Dijon opened in the heart of the Burgundy region in France, which is the home of Dijon mustard. *Id.* (click top arrow on right side of screen thirteen times).

29.    The Maille boutique in Dijon continues to operate today. *Id.*

30.    In 2007, Maille launched its boutique online in France to sell the "exclusive products" found in the boutiques in Paris and Dijon. *Id.* (click top arrow on right side of screen nineteen times).

31.    Unfortunately for consumers in the United States, at all relevant times, the Maille mustard Products were not made in France. Rather, they were made in Canada.

32.    At all relevant times, the Products were sold across California and the United States at a premium price above North American produced mustards.

33.    The Products' labeling, packaging, and marketing are likely to deceive reasonable consumers, including Plaintiff and the Class members, and only serve the profit-maximizing interests of Defendant.

34.    Defendant deceptively labeled and packaged the Products to target consumers who are interested in purchasing mustards made in France.

35.    The overall brand image of the Maille mustard Products, including the "Maille" name, is centered around France. Defendant uses references to France and French words on the Products' labels and packaging, creating the impression that the Products are made in France.

36.    The representations Defendant uses on the Product labels include one or more of the following. Taken in isolation and in the various combinations in which they are used on the labeling, these representations create a misleading perception that the Products are made in France:

    a.    the word "Paris" and/or a French address (or addresses);

    b.    a Paris emblem;

1          c.      the words "Depuis 1747"; and

2          d.      the words "Que Maille."

3          37.     For example, Defendant markets the Traditional Dijon Originale

4    Mustard Product using the following labeling:



27         38.     Furthermore, upon information and belief, Defendant provided the

28    following information to walmart.com, which appears on a webpage marketing for

1  the Traditional Dijon Originale Mustard Product:

2        Maille Dijon Originale Traditional Dijon Mustard goes

3        brilliantly with all types of food--meat, fish, cooked or raw

4        vegetables--and is a welcome addition to dressings and sauces.

5        ***260 years of mustard-making expertise stand behind the finesse***

6        ***and flavor of this outstanding mustard. Maille is the #1 brand***

7        ***of imported mustard in the U.S. It is the largest brand of***

8        ***mustard, vinegar and cornichons in France.***

9  *Maille Dijon Originale Traditional Dijon Mustard*, 7.5 OZ, WWW.WALMART.COM

10  (2019), http://bit.ly/2VhP3yx (emphasis added) (last visited Oct 28, 2019).

11      39.   Defendant knows, knew, or should have known that in making their

12  purchases of the Products, Plaintiff and the Class members did and would rely on

13  the labeling, packaging, and advertising of the Products and would reasonably

14  believe the Products were made in France.

15      40.   In reasonable reliance on the representations listed above, and

16  reasonably believing the Products were made in France, Plaintiff and the Class

17  members purchased the Products.

18      41.   A recent, independently conducted online survey by a market research

19  company (the "Survey") confirmed that consumers are being deceived. The Survey

20  was conducted among a demographically representative sample of over 400 U.S.

21  consumers who purchased mustard products prior to the Survey. As part of the

22  Survey, among other tasks, respondents were shown the principal display panel of

23  the Maille Dijon Originale mustard product and were asked "Based on the label of

24  the product, where do you believe the product is made?" To respond, respondents

25  were given a drop down list of 21 countries, including France, Canada, and the U.S.,

26  as well as the option to select "None of the above" or "I am not sure." Based on this

27  question, 63% of respondents chose France as the location they believe the Product

28  is made in.

---

CLASS ACTION COMPLAINT

8

42.     Consumer research has demonstrated that representations regarding geographic origin of a product have a direct effect on product evaluations by consumers, especially regarding the quality of the product.

43.     Plaintiff and the Class members did not know, and had no reason to know, that the Products are not made in France because of how the Products are deceptively labeled, packaged, and advertised to create the impression they are made in France.

44.     Because the Products are not made in France as reasonably expected by Plaintiff and the Class members, Defendant's marketing of the Products was and continues to be misleading and deceptive.

45.     Each consumer has been exposed to the same or substantially similar deceptive practices because: 1) each Product contains identical or substantially similar representations centered around France; and 2) none of the Products are in fact made in France.

46.     Plaintiff and the Class members have paid an unlawful premium price for the Products. Plaintiff and the Class members would have paid significantly less for the Products had they known that the Products were not made in France. In the alternative, Plaintiff and the Class members would not have purchased the Products at all had they known the Products were not made in France. Consequently, Plaintiff and the Class members purchasing the Products suffered injury in fact and lost money as a result of Defendant's false, unfair, and fraudulent practices, as described herein.

47.     As a result of its misleading business practices, and the harm caused to Plaintiff and the Class members, Defendant should be enjoined from deceptively representing that the Products are made in France. Furthermore, Defendant should be required to pay for all damages caused to misled consumers, including Plaintiff.

## CLASS ACTION ALLEGATIONS

48.     Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

Procedure, Plaintiff brings this action on behalf of a proposed class defined as follows:

> All California consumers who purchased one or more of the Products primarily for personal, family, or household purposes during the period from April 4, 2015, to the date of class certification.

49.    Excluded from the Class are: (a) Defendant, Defendant's board members, executive-level officers, attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

50.    Plaintiff reserves the right to alter the Class definitions as he deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Central District of California, and applicable precedent allow.

51.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

52.    <u>Numerosity; Rule 23(a)(1)</u>: The size of the Class is so large that joinder of all Class members is impracticable. Due to the nature of Defendant's business, Plaintiff believes there are thousands, if not millions, of Class members geographically dispersed throughout California.

53.    <u>Existence and Predominance of Common Questions of Law and Fact;</u> <u>Rule 23(a)(2), (b)(3)</u>: There are questions of law and fact common to the Class. These questions predominate over any questions affect only individual Class members.

54.    All Class members were exposed to Defendant's deceptive advertising and marketing representations indicating that the Products were made in France, when in fact the Products were not made in France.

55.    Furthermore, common legal and factual questions include but are not limited to:

   a.    whether Defendant engaged in the course of conduct alleged herein;

   b.    whether Defendant's conduct is likely to deceive a reasonable consumer;

   c.    whether Defendant's conduct constitutes an unfair or deceptive act or practice;

   d.    whether Defendant violated the consumer protection statutes set forth below;

   e.    whether Defendant was unjustly enriched by its conduct at issue;

   f.    whether Plaintiff and the Class members are entitled to actual, statutory, or other forms of damages and other monetary relief; and

   g.    whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

56.    Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers that will materially advance the litigation.

57.    Typicality; Rule 23(a)(3): Plaintiff's claims are typical of the claims of

the Class members because Defendant injured all Class members through the uniform misconduct described herein; all Class members were subject to Defendant's false, misleading, and unfair advertising and marketing practices and representations, including the false and misleading representations indicating that the Products were made in France when, in fact, they were not made in France; and Plaintiff seeks the same relief as the Class members.

58.   Furthermore, there are no defenses available to Defendant that are unique to Plaintiff.

59.   <u>Adequacy of Representation; Rule 23(a)(4)</u>: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests.

60.   Plaintiff has selected competent counsel that are experienced in class action and other complex litigation.

61.   Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

62.   <u>Injunctive or Declaratory Relief; Rule 23(b)(2)</u>: The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

63.   <u>Superiority; Rule 23(b)(3)</u>: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

        a.   The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address

1    Defendant's conduct.

2    b.    Further, it would be virtually impossible for the Class members

3          individually to redress effectively the wrongs done to them. Even

4          if Class members themselves could afford such individual

5          litigation, the court system could not. Individualized litigation

6          would unnecessarily increase the delay and expense to all parties

7          and to the court system and presents a potential for inconsistent

8          or contradictory rulings and judgments. By contrast, the class

9          action device presents far fewer management difficulties, allows

10         the hearing of claims which might otherwise go unaddressed

11         because of the relative expense of bringing individual lawsuits,

12         and provides the benefits of single adjudication, economies of

13         scale, and comprehensive supervision by a single court.

14   c.    The prosecution of separate actions by the individual members

15         of the Class would create a risk of inconsistent or varying

16         adjudications with respect to individual Class members, which

17         would establish incompatible standards of conduct for

18         Defendant.

19   d.    The prosecution of separate actions by individual Class members

20         would create a risk of adjudications with respect to them that

21         would, as a practical matter, be dispositive of the interests of

22         other Class members not parties to the adjudications or that

23         would substantively impair or impede their ability to protect their

24         interests.

25   64.   Notice: Plaintiff and his counsel anticipate that notice to the proposed

26   Class will be effectuated through recognized, Court-approved notice dissemination

27   methods, which may include United States mail, electronic mail, Internet postings,

28   and/or published notice.

## **CLAIMS FOR RELIEF**

### **FIRST CLAIM**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**CAL. CIV. CODE § 1750 *et seq.***
**On Behalf of the Class**

65.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

66.     Plaintiff brings this claim against Defendant on behalf of the Class for violation of California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* (the "CLRA").

67.     This claim seeks monetary and injunctive relief pursuant to California Civil Code section 1782.

68.     The CLRA prohibits various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

69.     Unilever designed its policies, acts, and practices to, and the policies, acts, and practices did, result in Plaintiff and the Class members purchasing and using the Products primarily for personal, family, or household purposes.

70.     The Products are "goods" within the meaning of California Civil Code section 1761(a), and the Plaintiff's and the Class members' purchases of the Products constitute "transactions" within the meaning of California Civil Code section 1761(e).

71.     Unilever has violated the following sections of the CLRA:

        a.     California Civil Code section 1770(a)(2), which prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services";

        b.     California Civil Code section 1770(a)(4), which prohibits "[u]sing deceptive representations or designations of geographic

origin in connection with goods or services";

    c.    California Civil Code section 1770(a)(5), which prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have";

    d.    California Civil Code section 1770(a)(7), which prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another";

    e.    California Civil Code section 1770(a)(9), which prohibits "[a]dvertising goods or services with intent not to sell them as advertised"; and

    f.    California Civil Code section 1770(a)(16), which prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

72.    At all relevant times, Defendant has known or reasonably should have known that the Products were not made in France, and that Plaintiff and the Class members would reasonably and justifiably rely on the labeling, packaging, and other advertisements in purchasing the Products.

73.    Plaintiff and the Class members purchased the Products based on the representations related to France, reasonably believing that the Products were made in France.

74.    Plaintiff and the Class members would not have purchased the Products, but for Defendant's misleading statements indicating the Products were made in France.

75.    Plaintiff and the Class members have reasonably and justifiably relied on Defendant's deceptive conduct when purchasing the Products. Moreover, based

on the very materiality of Defendant's deceptive conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and the Class members.

76.     Plaintiff and the Class members paid for Products that they believed were made in France but did not receive Products that were made in France.

77.     Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's conduct because they would not have purchased the Products or would have paid significantly less for the Products had they known that Defendant's conduct was misleading and fraudulent.

78.     Under California Civil Code section 1780(a)(2), Plaintiff and the Class members seek injunctive relief, preventing Defendant from further wrongful acts and unfair and unlawful business practices, as well as restitution, disgorgement of profits, and any other relief this Court deems proper.

79.     Attached to this Complaint is Plaintiff's venue declaration pursuant to California Civil Code section 1780(d).

80.     CLRA SECTION 1782 NOTICE. On April 1, 2019, counsel for Plaintiff mailed a CLRA notice and demand letter (the "Notice Letter") by certified mail, with return receipt requested, to Defendant. Defendant received the Notice Letter on April 4, 2019. The Notice Letter provided notice of Defendant's violation of the CLRA and demanded that Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The Notice Letter also stated that if Defendant refused to do so, Plaintiff would file a complaint seeking damages in accordance with the CLRA. Defendant failed to comply with the Notice Letter.

81.     Because Defendant has failed to fully rectify or remedy the damages caused, after waiting more than the statutorily required 30 days after it received the Notice Letter, Plaintiff timely filed this Complaint against Defendant.

82.     Therefore, Plaintiff prays for relief as set forth below.

**SECOND CLAIM**
**Violation of California's False Advertising Law**
**CAL. BUS. & PROF. CODE § 17500 *et seq.***
**On Behalf of the Class**

83.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

84.     Plaintiff brings this claim against Unilever on behalf of the Class for violation of California's False Advertising Law, California Business and Professions Code § 17500 *et seq.* (the "FAL").

85.     The FAL prohibits advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

86.     As detailed above, Defendant's marketing and sale of the Products to Plaintiff and the Class members was likely to deceive a reasonable consumer because Defendant's representations were likely to lead a reasonable consumer to believe the Products were made in France, when in fact the Products were not made in France.

87.     In reliance on Defendant's false and misleading representations indicating the Products were made in France, Plaintiff and the Class members purchased the Products. Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and the Class members.

88.     Unilever knew or should have known that its labeling and marketing of the Products was likely to deceive a reasonable consumer.

89.     Plaintiff and the Class members seek declaratory relief, injunctive relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, and other relief allowable under California Business and

Professions Code section 17535.

90. Therefore, Plaintiff prays for relief as set forth below.

### THIRD CLAIM
**Violation of California's Unfair Competition Law**
**CAL. BUS. & PROF. CODE § 17200 *et seq.***
**On Behalf of the Class**

91. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

92. Plaintiff brings this claim against Unilever on behalf of the Class for violation of the "unlawful," "unfair," and "fraudulent" prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (the "UCL").

93. The circumstances giving rise to the allegations of Plaintiff and the Class members include Defendant's corporate policies regarding the marketing, sale, and provision of the Products.

94. The UCL prohibits "unfair competition," which it defines to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." CAL. BUS. & PROF. CODE § 17200.

95. By engaging in the acts and practices described above, Defendant committed one or more acts of "unfair competition" as the UCL defines that term.

96. First, as detailed herein, Unilever's acts, misrepresentations, omissions, and practices violate the FAL and the CLRA, and they constitute breach of quasi-contract / unjust enrichment under California law. On account of each of these violations of law, Unilever has also violated the "unlawful" prong of the UCL.

97. Second, Defendant has committed "unfair" business acts or practices by, among other things:

    a. engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the Class members. Deceiving consumers as to the origin of the

CLASS ACTION COMPLAINT
18

1    Product is of no benefit to consumers;

2       b.    engaging in conduct that is immoral, unethical, oppressive,

3             unscrupulous, or substantially injurious to Plaintiff and the Class

4             members; and

5       c.    engaging in conduct that undermines or violates the spirit or

6             intent of the consumer protection laws alleged in this Class

7             Action Complaint.

8    98.   Third, Defendant committed "fraudulent" business acts or practices by,

9  among other things, engaging in conduct Defendant knew or should have known

10  was likely to and did deceive reasonable consumers, including Plaintiff and the Class

11  members.

12    99.   As detailed above, Defendant's marketing and sale of the Products to

13  Plaintiff and the Class members was likely to deceive a reasonable consumer

14  because Defendant's representations were likely to lead a reasonable consumer to

15  believe the Products were made in France, when in fact the Products were not made

16  in France.

17    100.   In reliance on Defendant's false and misleading representations

18  indicating the Products were made in France, Plaintiff and the Class members

19  purchased the Products. Moreover, based on the very materiality of Defendant's

20  fraudulent and misleading conduct, reliance on such conduct as a material reason for

21  the decision to purchase the Products may be presumed or inferred for Plaintiff and

22  the Class members.

23    101.   Unilever knew or should have known that its labeling and marketing of

24  the Products was likely to deceive a reasonable consumer.

25    102.   Plaintiff and the Class members seek declaratory relief, restitution for

26  monies Unilever wrongfully obtained, disgorgement of ill-gotten revenues and/or

27  profits, injunctive relief, and other relief allowable under California Business and

28  Professions Code section 17203.

---

CLASS ACTION COMPLAINT

103.   Therefore, Plaintiff prays for relief as set forth below.

**FOURTH CLAIM**
**Breach of Quasi-Contract / Unjust Enrichment / Restitution**
**Under California Law**
**On Behalf of the Class**

104.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

105.   Plaintiff brings this claim for breach of quasi-contract / unjust enrichment / restitution under California law against Unilever on behalf of the Class.

106.   Under California law, the elements of a claim for breach of quasi-contract / unjust enrichment / restitution are: (1) receipt of a benefit and (2) unjust retention of the benefit at the expense of another.

107.   As detailed above, Defendant has made deceptive representations to Plaintiff and the Class members indicating the Products were made in France, to induce them to purchase the Products. In fact, the Products were not made in France.

108.   Defendant's conduct created a quasi-contract with Plaintiff and the Class members, through which Defendant received a benefit of monetary compensation without providing the benefits Defendant promised to Plaintiff and the Class members.

109.   Plaintiff and the Class members conferred a benefit upon Defendant when they purchased the Products at a premium price, and Defendant has received and retained the monies that Plaintiff and the Class members paid for the Products.

110.   For the reasons described herein, the monetary benefits that Unilever obtained from Plaintiff and the Class members are to the detriment of Plaintiff and the Class members and violate fundamental principles of justice, equity, and good conscience.

111.   Such monetary benefits constitute unjust enrichment of Defendant, and it would be inequitable under the circumstances for Defendant to retain the benefits it has received.

112.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class members seek restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation that Defendant obtained from its deceptive and unlawful conduct as alleged herein.

113.   Therefore, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A.   certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.   declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.   declaring that Defendant has committed the violations of law alleged herein;

D.   providing for any and all injunctive relief the Court deems appropriate;

E.   awarding statutory damages in the maximum amount for which the law provides;

F.   awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G.   providing for any and all equitable monetary relief the Court deems appropriate;

H.   awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I.   awarding Plaintiff his reasonable costs and expenses of suit, including attorneys' fees;

J.   awarding pre- and post-judgment interest to the extent the law allows; and

K.      providing such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Date: October 28, 2019                         Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:  */s/ Benjamin Heikali*
     Benjamin Heikali (State Bar No. 307466)
     *bheikali@faruqilaw.com*
     Joshua Nassir (State Bar No. 318344)
     *jnassir@faruqilaw.com*
     10866 Wilshire Boulevard, Suite 1470
     Los Angeles, California 90024
     Telephone: (424) 256-2884
     Facsimile: (424) 256-2885

**REESE LLP**
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
Sue J. Nam (SBN 206729)
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

George V. Granade (SBN 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500

*Counsel for Plaintiff Dennis Culver*
*and the Proposed Class*

CLASS ACTION COMPLAINT
22

DocuSign Envelope ID: 745AC020A6728A1AE49D605FE63DB678945

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Dennis Culver, declare as follows:

1.     I am the named Plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.     This Class Action Complaint is filed in the proper place of trial because I purchased the Products in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on _____, 2019 in Carpinteria, California.

10/26/2019 | 1:24 PM PDT

DocuSigned by:

Dennis Culver

03EE7A980815418...

_____

Dennis Culver