**JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-9263-GW-RAOx | Date | June 14, 2021 |
|---|---|---|---|
| Title | *Dennis Culver v. Unilever United States, Inc.* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                Attorneys Present for Defendants:

None Present                                            None Present

**PROCEEDINGS:    IN CHAMBERS - FINAL RULING ON DEFENDANT UNILEVER UNITED STATES, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [42]**

Attached hereto is the Court's Final Ruling. The Court GRANTS the motion to dismiss with prejudice.

Initials of Preparer    JG

**_Dennis Culver v. Unilever United States, Inc._**; Case No. 2:19-cv-09263-GW-(RAOx)
Final Ruling on Motion to Dismiss First Amended Complaint

## I.     Background

Plaintiff Dennis Culver brought this putative class action against Defendant Unilever United States, Inc. for deceptive business practices related to the sale of its Maille Old Style Mustard and Maille Dijon Originale Mustard (the "Products").  *See* First Amended Complaint ("FAC") ¶ 1, *see* ECF No. 40.  Culver alleges that the packaging and labeling of the Products mislead customers into believing that the Products are manufactured in France, when they are actually made in Canada.  *Id.* ¶¶ 2-4.  Before the Court is Defendant's Motion to Dismiss the First Amended Complaint ("Mot." or "Motion"), *see* ECF No. 42.  For the reasons set out below, the Court **GRANTS** the Motion.

### A.    Factual Background

Defendant Unilever sells several types of mustards under the Maille brand, which traces its roots back to France in the 1700s.  *See* FAC ¶¶ 2-4.  Antoine-Claude Maille opened his first boutique in Paris in 1747 to sell a range of aromatic mustards and became the official mustard supplier of King Louis XV.  *Id.* ¶¶ 28-30.  A second Maille boutique opened in Dijon, home of the eponymous mustard, in 1845 and continues to operate to this day.  *Id.* ¶¶ 28-30.  The Unilever family of companies acquired the Maille brand in 1999.  *See* Mot. at 6; Declaration of Benjamin Crook ("Crook Decl.") ¶ 3, ECF No. 42-1.  Unilever currently produces several varieties of mustard condiments under the Maille brand that are made in either France or Canada.  *See* Mot. at 6-7.

At issue in this action, are two Maille mustard varieties that are manufactured in Canada: *i.e.* Maille Old Style Mustard and Maille Dijon Originale Mustard.  Plaintiff contends that the front label of the Products misleads consumers into believing the mustards were made in France, rather than in Canada.  Plaintiff specifically points to only three features of the front label upon which he bases his claim: *i.e.* (1) the word "Paris;" (2) the words "Depuis 1747;" and (3) the words "Que Maille."  FAC ¶¶ 39-40.  The front labels of the two Products are depicted below:[1]

---

[1] As in the previous round of briefing for the first motion to dismiss, Defendant requests that the Court take judicial notice of several versions of the front and rear labels for the Products.  *See* Request for Judicial Notice ("RJN"), ECF No. 43.  Specifically, judicial notice is sought for the labels of Maille Old Style Mustard from 2017 (Exh. B), from 2018 (Exh. A), for a larger 12oz size (Exh. C), and the latest modified label from 2021 that removes the allegedly misleading representations (Exh. I).  Defendant also requests judicial notice of the labels for Maille

 

*Id.*  ¶¶ 40-41.  Defendant maintains that, while the Product labels were designed to evoke a French feel and pay homage to the history of the Maille brand, they do not mislead a reasonable consumer into believing the Products were actually produced in France.  Mot. at 5-6.  Further, if there was any confusion, Defendant asserts that consumers could simply turn to the Products' rear labels, which clearly state the country of origin, *i.e.* "Product of Canada."  *Id.* at 6-7.



Dijon Originale Mustard from 2014 (Exh. F), from 2017 (Exh. E), from 2019 (Exh. D), for a larger 13oz size (Exh. H), for the mustard with a note as to "no added sulfites" (Exh. G), and the latest modified label from 2021 that removes the allegedly misleading information (Exh. J).  Plaintiff offers no objections to Defendant's RJN; the labels are extensively discussed in the FAC; and the authenticity of the labels is not disputed.  Consequently, the Court grants the RJN.  *See Przybylak v. Bissell Better Life LLC*, No. CV-19-2038, 2019 WL 8060076, at *4 n.2 (C.D. Cal. July 19, 2019); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 389 (E.D. N.Y. 2017); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (A court may take judicial notice of documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.).

*See* RJN, Exh. A (red box added), ECF No. 43.

Plaintiff Culver is a citizen of California who purchased the Products between 2018 and 2019 from a Costsco store in Oxnard, California; a Costco in Goleta, California; and an Albertsons in Carpinteria, California.  FAC ¶¶ 17-18.  Culver avers that he last purchased one of the Products in February 2019.  *Id.* ¶ 19.  He claims that the references to France and the French language on the labels led him to believe that the Products were made in France.  He asserts that he would not have purchased the Products (or would have paid less for the Products) had he known they were made in Canada.  *Id.* ¶¶ 21-24.  Plaintiff submits data suggesting the existence of a "price premium" based on the false representation that the Products are made in France.[2]  *Id.* ¶¶ 56-62.

In support of his allegations that the packaging and labeling are misleading, Culver submits three online comments from a website (*i.e.* Top Class Actions) that reports on consumer class actions and allows users to attempt to join ongoing class actions.  *Id.* ¶ 44. Culver also includes an online comment from Defendant's website where a user states that the "mustard is not authentic" and is "made in Canada and does not have the same pungent wonderful flavor as mustard from Dijon."[3]  *Id.* ¶ 46.

 Culver also proposes conducting a new online survey to confirm that consumers are being deceived.  In his original Complaint, Culver included data from an already conducted survey that indicated that 63% of participants thought the Products were made in France.  In the context of Defendant's motion to dismiss the original complaint, after reviewing the survey, the

---

[2] The data referenced in the FAC consists of Plaintiff's counsel's: (1) going to four common supermarket chains in the Los Angeles area (including Ralphs and Whole Foods), (2) collecting the prices on all mustards from brands other than Maille that were manufactured in North America, and (3) reaching an average price per ounce for all of those made-in-North America mustard condiments, and (4) comparing that average price to the price per ounce for the Products at those stores.  *See* FAC ¶¶ 56-61.  There are several problems with that exercise, a few of which are noted herein.  First, Maille is a premium brand of mustard condiments.  Therefore, comparing the price of Maille mustards with non-premium brands is misleading.  It would be like matching the cheapest generic yellow mustard sold at a store with the most expensive specialty mustard.  Second, the Products are not normal mustards.  Maille Dijon Originale Mustard – as its name indicates – is a Dijon-style mustard.  Maille Old Style Mustard is a whole grain mustard.  Said types of mustards are different from regular mustards such as the ordinary yellow variety. Thus, to make an applicable comparison, Plaintiff should not have utilized all mustards made in North America, but only Dijon and whole grain mustards.  Third, glass containers are more expensive than plastic ones, and Plaintiff did not include that factor, among others, into the calculation.  Finally, even if Plaintiff's exercise shows a price differential as to the Maille Products, there is no evidence that said differential is due a purported misrepresentation that the Products were made in France rather than in Canada.

[3] The referenced post does not support Plaintiff's case herein since the commentator does not indicate that he or she was ever misled by the Defendant's Products' labels into thinking that the Maille Dijon mustard was made in France.

Court rejected it as inadequate because, *inter alia*: (1) it only showed respondents the front label of the Products and not the back label which clearly stated that Products were made in Canada; and (2) there was no showing that the respondents were a proper representative sample for modeling the actions/expectations of reasonable consumers in the present context.[4]  *See* Final Ruling on Defendant's Motion to Dismiss ("Dismissal Ruling") at 23-24, ECF No. 36.  In his FAC, Culver proposes conducting a second online survey among a demographically representative sample of 600 California consumers.  FAC ¶ 47.  He has provided an Offer of Proof with an outline and mock-up of the proposed survey for the Court's review.  *See* Plaintiff's Offer of Proof, ECF No. 41.

    B. <u>Procedural Background</u>

Culver's original Complaint raised four causes of action: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (4) breach of quasi-contract/unjust enrichment/restitution under California law.  *See* Complaint ("Compl.") ¶¶ 65-113, ECF No. 1.  The proposed class consisted of "[a]ll California consumers who purchased one or more of the Products primarily for personal, family, or household purposes during the period from April 4, 2015, to the date of class certification."[5]  Compl. ¶ 45.  Culver sought statutory and monetary damages as well as injunctive relief.  *See* Prayer for Relief, Compl. at 21.

Defendant moved to dismiss arguing that: (1) Culver's claims failed to meet Rule 8(b)'s plausibility threshold – no reasonable consumer would be misled by the packaging and labels, especially because the containers clearly state "Product of Canada" on the back; (2) Culver's claims involving fraud were not pled with particularity as required by Rule 9(b); (3) Culver

---

[4] For example, the Court was concerned that Defendants had failed to establish that survey participants were reasonable consumers who desire to purchase mustards produced in France (or some other specific country) or whose mustard purchasing decisions are affected by the provenance of the product.  *See* Dismissal Ruling at 25.

[5] The Complaint did not specifically define the term "products" but rather simply referred to "Maille brand mustard products."  *See, e.g.,* Compl. ¶¶ 1, 2, 12.  As noted in the Dismissal Ruling, Defendant sells a number of different types of mustard products under its Maille brand label.  *See* ECF No. 36 at 10 of 27.  Culver only alleged that he had purchased Defendant's Maille Old Style Mustard and Maille Traditional Dijon Originale Mustard.  *See* Compl. ¶ 15.  However, there are a number of other Maille brand mustard varieties sold in California, including but not limited to: Maille Rich Country Mustard, Maille Honey Dijon Mustard, Maille Horseradish Mustard.  *See* ECF No. 36 at 7 of 27.  Many of those other mustard products are, in fact, made in France, as the rear labels of their containers plainly state.  *Id.*

lacked standing as to Maille products that he did not actually purchase; and (4) Culver's claims were preempted by federal regulations promulgated by the FDA. *See* ECF No. 16 at 1-2. The Court carefully considered the submissions from both sides, including extensive supplemental briefing on recent appellate and district court decisions. *See* ECF Nos. 23-34. The Court ultimately granted Unilever's motion to dismiss holding that the front labels on the Products did not contain sufficiently deceptive features as to the place of origin, such that the obvious designation of where the mustard was manufactured on the real label was adequate to dispel any speculation. *See* Dismissal Ruling at 16. And, as noted previously, the Court found Culver's submitted survey results inadequate. *Id.* at 23-24.

During a hearing on the original motion to dismiss, Plaintiff sought another attempt to conduct a survey to support a plausible claim that the labels are nonetheless misleading to consumers. *See* Transcript for Proceedings held on January 21, 2021 at 6-8, ECF No. 38. The Court ordered Plaintiff to file a FAC and an Offer of Proof where they would outline their plans and "show exactly how the survey would be done." *Id.* at 18-19. Defendant would then lodge their objections to the proposed survey, and the Court could either approve or deny the proposed survey. *Id.* at 20. If approved, Plaintiff would conduct the survey and include the results in another amended complaint. *Id.*

In accordance with that plan, Plaintiff has filed their FAC, including their Offer of Proof outlining the proposed survey, and Defendant has moved to dismiss. *See* Mot. Plaintiff has provided an Opposition ("Opp."), *see* ECF No. 48; and Defendant filed a Reply, s*ee* ECF No. 50.

## II.    Legal Standard

### A.    Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see also *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  Where a plaintiff facing a 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied.  *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013).  But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] . . . the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (citations omitted).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

  B. <u>Consideration of Plaintiff's Consumer Protection Claims</u>

  Culver's claims under California's consumer protection statutes (*i.e.* the CLRA, FAL, and UCL) are governed by the "reasonable consumer" test: *i.e.* a plaintiff must show "members of the public are likely to be deceived."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).  "[T]hese laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has the capacity, likelihood or tendency to deceive or confuse the public."  *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985).  However, the test requires more than "a mere possibility" that the labels "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Ebner*, 552 F.3d at 965 (quoting *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).  Rather, a plaintiff must show a probability that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Id.* (quoting *Lavie*, 105 Cal. 4th at 508).

  It has been noted by some courts that, except in rare circumstances, the question of "whether the packaging as a whole was deceptive is a question of fact that cannot be resolved on a motion to dismiss."  *See, e.g., Zakaria v. Gerber Products Co.*, No. 15–200–JAK, 2015 WL 3827654, at *8 (C.D. Cal. 2015) (citing *Williams*, 552 F.3d. 934).  The Ninth Circuit in *Williams* referenced *Linear Technology Corp. v. Applied Materials, Inc*., 152 Cal. App. 4th 115, 134-35 (2007), for the proposition that "[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which *usually* cannot be made on demurrer. [emphasis added]."  552 F.3d at 938-39.  Finding that there were "a number of features of the packaging [defendant] used for its Fruit

Juice Snacks product which could likely deceive a reasonable consumer," the Circuit in *Williams* stated that: "[t]he facts of this case . . . do not amount to the *rare* situation in which granting a motion to dismiss is appropriate. [emphasis added]."[6] *Id.* at 939. However, "usually" and "rare" do not connote "never."[7] Moreover, there has been an ever-increasing number of cases (even within the Ninth Circuit) in which a motion to dismiss was found to be appropriately granted where the issue was whether a product label is (or could be) deceptive or misleading to a reasonable consumer. *See, e.g., Becerra v. Dr. Pepper/Seven Up, Inc.,* 945 F.3d 1225, 1228-31 (9th Cir. 2019); *Ebner*, 838 F.3d at 965-66; *Lokey v. CVS Pharm., Inc.*, No. 20-cv-04782-LB, 2021 WL 633808 (N.D. Cal. Feb. 18, 2021); *Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2020 WL 7043879 (N.D. Cal. Dec. 1, 2020); *Cheslow v. Ghirardelli Chocolate Co.,* 445 F. Supp. 3d 8 (N.D. Cal. 2020).

## III.    Discussion

Defendant moves to dismiss and argues that: (1) Plaintiff's proposed survey is still deficient (*e.g.*, it fails to show the back label to all participants); (2) Plaintiff cannot pursue any equitable claims because he has an adequate remedy at law; (3) Plaintiff's fraud claims are not pled with the requisite particularity; and (4) Plaintiff lacks standing to seek injunctive relief because Defendant has completed a label change for the Products. *See* Mot. at 13-21.

In his Opposition, Plaintiff agrees to withdraw his equitable claims for breach of quasi-contract, unjust enrichment, and restitution as per *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) (dismissing equitable relief claims of consumers under UCL, FAL, CLRA because plaintiffs had an adequate remedy at law). *See* Opp. at 17. Plaintiff, however, maintains that the proposed survey does not need to show the back label to all participants because of new research indicating that 90% of consumers only visually examine the front of a package.

---

[6] As observed in *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1036 (N.D. Cal. 2015), "*Williams* [was] issued shortly before the Supreme Court significantly changed the Rule 12 pleading standards in *Iqbal* . . . ."

[7] As observed in *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1300-01 (2011):

"[t]he standard to be used in evaluating whether an advertisement is deceptive under the UCL is purely a question of law…." (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 503 [129 Cal.Rptr.2d 486].) Other courts have stated that whether a business practice is fraudulent, deceptive, or unfair is generally a question of fact requiring the consideration and weighing of evidence, and usually cannot be decided on demurrer. (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 134–135; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1472; *Williams v. Gerber Products Co.* (9th Cir. 2008) 552 F.3d 934, 938–939.) This is not an irreconcilable conflict: generally and usually do not mean invariably, and a demurrer must be sustained when the assumed facts show lack of a valid claim.

Plaintiff also highlights additional online comments included in the FAC that purportedly show that the packaging and labeling of the Products are misleading consumers. Finally, Plaintiff also argues that his fraud-based claims have been delineated with the requisite particularity, and the proposed labeling changes do not moot his requests for injunctive relief. *See* Opp. at 10-22.

The Court will first address Plaintiff's standing to pursue injunctive relief and then focus on whether Plaintiff's fraud claims are pled with particularity. Finally, the Court will address the proposed survey and Plaintiff's other new evidence.

    A. <u>Injunctive Relief</u>

Along with its present motion to dismiss, Defendant submits evidence that it has completed designing new labels for the Products as part of a global brand modernization effort which it began in 2017. *See* Opp at 7-8; Crook Decl. ¶¶ 5-7. Defendant avers that the new design no longer contains any of the alleged misleading representations (the word "Paris," the word "Depuis," and the phrase "Que Maille") that were previously present on the front label, while the back label remains unchanged and still states "Product of Canada." *See* Crook Decl. ¶ 5. The new front labels of the two Products are shown below:



*See* RJN, Exhs. I-J. Defendant states that: "As retailers sell through old inventory, products bearing the new labels will be put on store shelves." *See* Crook Decl. ¶ 6.

    Plaintiff does not seem to dispute that the labeling changes would remove all the alleged misrepresentations, but argues that Defendant: (1) is still utilizing its inventory with old labels until they expire, and (2) must also meet the "heavy burden of proving that the challenged conduct cannot reasonably be expected to [re]occur." Opp. at 18. In support, Plaintiff provides

two cases where the courts did not dismiss an injunction claim as moot – even with the evidence of labeling changes that alleviated the relevant concerns, because the courts wanted a developed factual record.  *See Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at \*13 (N.D. Cal. May 26, 2011) ("the availability of injunctive relief cannot be determined until the parties have developed the factual record"); *Reese v. Odwalla, Inc.*, No. 13-CV-00947, 2017 WL 565095, at \*6 (N.D. Cal. Feb. 13, 2017) (same).

The Court finds both cases distinguishable because Defendant has established a sufficient record in this action.  Defendant has submitted a sworn declaration from a Unilever executive that unequivocally states that: (1) Unilever has produced new labels that remove all the alleged misleading representations; (2) Unilever is already printing the new labels; and (3) Unilever has no plans to utilize the old ones.  *See* Crook Decl. ¶¶ 5-7.  As retailers sell through old inventory, all the Products will soon bear the new labels.  *Id.* ¶ 6.  Defendant has also included the new labels in their granted Request for Judicial Notice, and the Court confirms that said labels have eliminated all of the alleged misrepresentations that are the target of Plaintiff's FAC.  *See* RJN, Exhs. I-J.  There is no evidence that the sale of old inventory would take more time than the processing of this lawsuit should the motion to dismiss be denied.[8]

Plaintiff has offered no rebuttal or any contrary evidence to indicate that Defendant will not follow through on the plans/actions delineated in the submitted declaration.  Meanwhile, it is Plaintiff's burden to establish his Article III standing with respect to each claim.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing these elements.").  And standing for injunctive relief requires a showing of "real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  The Court finds a lack of standing here where Defendant has provided a declaration stating that it: has redesigned the front labels to remove the challenged language; is in the process of printing the new labels and placing them on the Products; and has no plans to revive the use of the old labels – especially where the Plaintiff has offered nothing to demonstrate future harm.  *See Lanovaz v. Twinings N. Am., Inc*, No. 12-CV-02646, 2016 WL

---

[8] The Court notes that, examining the websites for certain of the supermarket chains which Plaintiff's counsel referenced in the FAC (*e.g.*, Ralphs – *see* footnote 2, *supra*), the images for the Maille Products are beginning to appear with the new 2021 labels. *See, e.g.,* Maille Mustard Dijon Originale, 7.5 oz. at Ralphs – https://www.ralphs.com/p/maille-mustard-dijon-originale/0004364620128?fulfillment=DELIVERY (last visited June 10, 2021).

4585819, at *3 (N.D. Cal. Sept. 2, 2016) (finding a lack of standing to pursue injunctive relief when evidence included a declaration stating that there was no intention to resume use of the discontinued labels).

B. Pleading Fraud Under Rule 9(b)

Unilever argues that Culver has not plead his claims based in fraud with particularity as required by Fed. R. Civ. P. 9(b). Defendant asserts that Plaintiff failed to provide the "when," "where," and "how" he was misled by the Defendant's packaging and labeling on the Products. *See* Mot. at 17-19. Plaintiff counters that the FAC has particular details concerning those elements. *See* Opp. at 14-16. Specifically, the FAC recites that Plaintiff last bought the Products in or around February 2019, and where exactly the Products were purchased. *See* FAC ¶¶ 17-18. As to the "how," Plaintiff alleged that the "references to France and the use of the French language on the labels" caused Plaintiff to believe the Products he was buying were made in France.[9] *Id.* ¶¶ 20-25.

The Court finds that Plaintiff has pled his fraud claims with particularity. *See Snarr v. Cento Fine Foods Inc.*, No. 19-CV-02627, 2019 WL 7050149, at *4 (N.D. Cal. Dec. 23, 2019) ("While Defendant argues that Plaintiffs have not alleged with particularity where or when Plaintiffs purchased the products, the Court finds that it is enough that Plaintiffs have alleged they purchased the products within the last year at a limited list of grocery stores."); *Brown v. Starbucks Corp.*, No. 18-CV-2286, 2019 WL 4183936, at *3 (S.D. Cal. Sept. 3, 2019) (finding the "when" requirement satisfied because plaintiff stated that he purchased the product in December 2017). Defendant's cited cases are inapposite because they involve situations where the complaint made no attempt to establish the "where" and "when." *See, e.g., Bogart v. Glenmark Generics, Inc., USA*, No. 14-CV-778-LAB DHB, 2014 WL 5800577, at *4 (S.D. Cal. Nov. 7, 2014) ("[T]he complaint d[id] not make any allegations as to how the misrepresentations were made, where they appeared, or when they appeared.").

Finally, Plaintiff explains the "how" by stating that the references to France and the French words made him believe the mustard was made in France and he was willing to pay a price premium for French mustard. This should not be wholly surprising to Defendant who submits that the labeling of the Products "had references to evoke a French feel and pay homage

---

[9] Because the front labels of the Products did not actually mention France, it is unclear what exactly Plaintiff means when he avers to the labels' "references to France."

to the rich history of the Maille brand." *See* Mot. at 5. While the Court ultimately agrees with Defendant that a reasonable consumer would not find any misrepresentations on the front label, Plaintiff's allegations are nonetheless "sufficient to give Defendant ample notice of the particular circumstances" underlying Plaintiff's claims. *See Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1035 (N.D. Cal. 2016).

The Court finds that Plaintiff has pled his fraud-based claims with particularity as required by Fed. R. Civ. P. 9(b).[10]

C. Whether the Former Labeling of the Products Was Likely to Deceive a Reasonable Consumer

The Court now turns to the question at the heart of this action: whether the former labeling of the Products was likely to deceive a reasonable consumer as to the country where the Products were made. Plaintiff attempts to sway the Court from the rulings in its first Dismissal Ruling by providing supplemental authority and new evidence which (he contends) indicates that the labeling was misleading. *See* FAC ¶ 44; Opp. at 8-9. Plaintiff also proposes a new survey which he argues could potentially provide additional evidence as to the plausibility of his claims. *See* Offer of Proof, Exhs. 1-2, ECF No 41. The Court will address each issue in turn, but would initially point out the reasons why Culver's FAC fails to state a claim.

i. *Fundamental Flaws in the FAC*

Initially, it is observed that the basic premise of Culver's lawsuit has not changed between the original Complaint and the FAC. He contends that the mere presence of the words "Paris," "Depuis 1747" and "Que Maille" on the front label of the Products would so mislead reasonable consumers into believing that the Products were made in France that they would purchase the Products based substantially upon that assumption without looking at the rear label (which would have told them precisely where the Products were made). *See* FAC ¶¶ 38-43. In granting the prior motion to dismiss, this Court discussed in detail why that premise fails. *See* Dismissal Ruling at 9-25. That discussion is incorporated herein, along with a few additional observations.

First, Culver seeks to bring a class action on behalf of "all California consumers who

---

[10] Previously, this Court found the Rule 9(b) particularity deficiency to arise from Culver's failure to delineate which of Defendant's Maille mustard products was the basis of his misrepresentation claims. Given that Culver has now limited his claims to cover only the two specific varieties of Maille mustards that he actually purchased, that problem has been remedied.

purchased one or more of the Products primarily for personal, family, or household purposes during the period from April 4, 2015, to the date of class certification." See FAC ¶ 64. However, he fails to establish or aver that *all* (or even a significant percentage of) California consumers of the Products really care where the mustards were manufactured. Likewise, there is nothing to indicate to what extent, if any, reasonable consumers would rest their mustard purchasing decisions on whether the condiment was made in France – as opposed to Canada or any other country. While the Court would concede that there are undoubtedly some consumers who actually are concerned with the country of origin as to their mustard goods, Culver does not appear to be bringing this lawsuit on behalf of that limited subset of mustard purchasers but rather is litigating this action for *all* buyers of Defendant's Products. The failure to provide such averments raises insurmountable problems herein. For example, in *Brod v. Sioux Honey Ass'n*, 927 F. Supp. 2d 811 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 415 (9th Cir. 2015), a class action was brought for failure of the defendant to include on the label of its honey product notice that all of the naturally occurring pollen had been removed from the commodity. The court observed that while a "particularly sophisticated consumer might consider pollen to be a valuable component of honey, such that the non-disclosure of its removal from Sue Bee Honey would likely result in deception to him or her . . . . [that would] not establish that the *reasonable* consumer would expect honey to contain pollen." *Id.* at 828-29 (emphasis in original). The court went on to find that:

> Plaintiff's complaint is silent on this point with the exception of certain threadbare conclusory recitals that "Plaintiff and members of the Class would not have purchased the Sue Bee Honey" had they known that it was "filtered or pollen-free" . . . . "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice" to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. at 678. No such plausible claim about the expectation of a reasonable consumer is stated here.

*Id.* This deficiency was present in the original Complaint and has not been remedied in the FAC.

Second, the allegedly misleading words do not by themselves actually indicate the country where the Products are manufactured. While the front labels contain two words in the French language – which are prepositions (*i.e.* "depuis" and "que") – and two proper nouns (*i.e.* "Paris" and "Maille"), there are no concomitant words or references to a geographic source or origin. For example, there are no phrases such as "from Paris (*i.e.* "de Paris"), "product of

France," or even "imported."[11]   All of the remaining many words on the front label are in English.  Likewise, the translation of the French words into English does not suggest the place of manufacture.  "Depuis 1747" means "since 1747" and "que Maille" means "that (or than) Maille."  Thus, the pleadings do not delineate a basis, other than unfounded supposition, for a consumer to believe that the Products were made in France.

Third, as noted in the FAC, the "Maille" brand has been a source of "mustards, salad dressings, oils, and other products that originated in France in the 1700s" and, in 1747, Antoine-Claude Maille "opened his first boutique in Paris and became official supplier to the court of King Louis XV."  *See* FAC ¶ 30.  Further, this Court has previously taken judicial notice that "in 2013 Unilever filed and in 2016 received a trademark registration from the U.S. Patent and Trademark Office . . . for 'Maille Que' [and] 'Maille Que Maille' . . . . [and] Unilever N.V. Corp. Netherlands is the owner of the word mark 'Maille 1747 QueMaille.'"[12]   *See* Dismissal Ruling at 10-11.  It cannot be doubted that Defendant has the right to utilize its trademarks and other authorized words which correctly indicate that the Products belong to the Maille brand. Thus, Defendant cannot be held to be misleading the consuming public when it utilized either its trademarks (*i.e.* "Maille" or "Que Maille") or other words or phrases which are associated with its merchandising history (*i.e.* "Paris" and "Depuis 1747" – reflecting the opening in 1747 of its first boutique establishment in Paris).   The situation here is further complicated because Defendant under its Maille brand sells a number of mustard varieties some of which are made in France while others are manufactured in Canada.   Ultimately, Defendant can use words and phrases on the front labels of its Products which properly and lawfully identify Maille as the source of the goods, where those words and phrases do not by themselves refer or mislead the consumer as to the Products' country of origin and where the rear label unmistakably identifies Canada as the location where the mustard is made.

Finally, the undisputed facts as to the labeling in this case plainly demonstrate that it falls

---

[11] Previously, in the original Complaint, Culver had alleged that the Product labels included a "French address."  *See* Compl. ¶ 36.  However, as pointed out in the Dismissal Ruling at 2 and 6, none of the front labels of any of the Maille varieties of mustards included any address, let alone a French address.  As to the rear labels, they all correctly stated the country of origin and, with one exception, the only address provided was "Distributed by: © Unilever, Englewood Cliffs, NJ 07632."  *Id.* at 6.  The one exception was on the rear label of the 2017 version of the Maille Dijon Originale Traditional Dijon Mustard which stated (next to the "Product of Canada" notice): "Manufactured for: Amora Maille SI, ZI De La Norge, Chevigny Saint-Sauveur, 21800, Quetigny, France."  *Id.*

[12] Defendant also obtained a trademark for an emblem which included the word "Maille" under a coat of arms which included the words "Que Maille Qui M'Aille."  *See* Dismissal Ruling at 10.

outside of those cases such as *Williams* which found the front of the challenged merchandise's packaging to be so deceptive that "reasonable consumers [shouldn't] be expected to look beyond misleading representations on the front of the box to discover the truth . . . in small print on the side of the box." *See* 552 F.3d at 939.  In *Williams*, the front of the container was found to be misleading because: (1) the product (which was marketed for toddlers) was labelled "Fruit Juice Snacks" and the name was juxtaposed atop of images of oranges, peaches, strawberries and cherries; but, in fact, the product did not contain a variety of fruits (as depicted) but only white grape juice from concentrate (which was not shown on the packaging); and (2) the cover stated that the product was "naturally flavored" with "no preservatives or artificial flavors;" but, in fact, the three principal ingredients of the snack were corn syrup, sugar and white grape juice with no indication of what natural flavors were present.  *Id.* at 936, 939.  Here, as noted above, there are no similar misleading elements.  The front labels of the Products do not state that the mustards were made in France or were even imported.  The two French words and the two proper names on the front labels were either Defendant's trademarks or referenced the history of the Maille brand.  That is not enough to make the labels so misleading that a reasonable consumer – who had a question as to the country of origin of the Products – would not be expected to look at the full packaging for the answer, which was clearly and correctly provided on the rear label.

### ii. *New Supplemental Authority*

In its Dismissal Ruling, this Court conducted an extensive analysis of cases cited by the parties before holding that the Products' labels herein were not deceptive as to place of origin. *See* Dismissal Ruling at 16-21.  The Court reviewed and distinguished the decisions denying motions to dismiss in *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453 (S.D.N.Y. 2020); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014); *Shalikar v. Asahi Beer, U.S.A., Inc.*, No. CV-17–02713-JAK-(JPRx), 2017 WL 9362139 (C.D. Cal. Oct. 16, 2017); and *Peacock v. Pabst Brewing Co., LLC*, No. 2:18-cv-00568-TLN-CKD, 2020 WL 5847244 (E.D. Cal. Oct. 1, 2020).  The Court further noted that there were a number of cases with similar circumstances that reached a contrary ruling and granted the motions to dismiss.  *See Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386 (E.D.N.Y. 2017); *Dumas v. Diageo PLC*, No.: 15-cv-1681-BTM-(BLM), 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016).

Plaintiff now presents – as further supplemental authority – *Juan de Dios Rodriguez v. Ole Mexican Foods Inc.*, No. EDCV 20-2324-JGB-(SPx), 2021 WL 1731604, at *5 (C.D. Cal.

14

Apr. 22, 2021).   In *Rodriguez*, the plaintiff alleged that defendant's tortillas were falsely advertised and misled customers into believing that they were made in Mexico, when they were actually manufactured in the United States.   The packaging of the tortillas therein contained: (1) the phrase "El Sabor de Mexico!" which means "a Taste of Mexico!;" (2) a Mexican flag on the front and center of the packaging; (3) the brand name "La Banderita;"  (4) a circular logo with the Mexican flag and the word "Authentic;" and (5) Spanish words and phrases, such as "Sabrosísimas" or "Tortillas de Maiz" which described the attributes of the torillas.  *Rodriguez*, 2021 WL 1731604, at *3.  The packaging did state on the back label that the products were made in the United States.  *Id.* at *4.   Nevertheless, the court in *Rodriguez* found that the phrases like "A Taste of Mexico," a Mexican flag placed front and center, a Mexican flag with the word "Authentic," and the other Spanish words and phrases could mislead a reasonable consumer into believing that the foods were made in Mexico.  *Id.* at *5.  Because the *Rodriguez* court found the misrepresentations were displayed prominently on the front label, the back label (that stated the actual country of origin) was deemed insufficient to remedy the problem.  *Id.*

It is initially observed that the decision in *Rodriguez* is not binding on this Court. Second, the facts herein are clearly different.  The *Rodriguez* decision did not include a depiction of the front label of the package.  Nevertheless, that decision referred to many Spanish words, phrases and symbols which were paraded on the front of the container including the brand name (*i.e.* "La Banderita"), the Spanish names for the types of torillas (*i.e.* "La Banderita Burrito Grande," "La Banderita Sabrosísimas Corn," "La Banderita Sabrosísimas Flour," "La Banderita Whole Wheat Fajita," and "Tortillas de Maiz"), representations indicating Mexican origin (*i.e.* "El Sabor de Mexico!" – "A Taste of Mexico!"), and a Mexican flag on the front and center of the packaging.   The overwhelming use of Spanish words, references to Mexico, and the prominent display of the flag of Mexico was held to be sufficiently misleading.   Here, in contrast, the front label of the Products contains only two French words and the proper names "Paris" and "Maille."  There is no French flag or repeated (or even any) references to "France." Further, as noted above, all of the French words and proper names used in the front label of the Products are either part of Defendant's trademarks and/or refer to the Maille brand's history. The Court is unswayed by the *Rodriguez* decision.

       iii.  *Comments on the Top Class Action Website*

Plaintiff also offers – as additional evidence that Defendant's former labeling was

misleading to reasonable consumers – a few online comments from a website, *i.e.* Top Class Actions ("TCA"), that reports on consumer class actions.  The FAC shows three comments from the website where users admit to feeling deceived and communicate that they want to be added to the class action.  *See* FAC ¶ 44.  Defendant argues that such individual comments cannot be trusted to inform as to the reasonable consumer standard because the TCA website is used to solicit individuals to join or start class actions.  Mot. at 12 (citing how the website advertises that it can "tell you about cash you can claim every week!").

There appear to be two cases that have addressed the issue.  One court found that the comments on TCA counted as anecdotal evidence that consumers have been deceived or would be deceived.  *See Adams v. Starbucks Corp.*, No. CV-20-00225, 2020 WL 4196248, at *5 (C.D. Cal. July 9, 2020).  Another found the comments irrelevant to informing the reasonable consumer standard because the comments were posted in the context of asking to join the lawsuit.  *See Prescott v. Nestle USA, Inc.*, No. 19-CV-07471-BLF, 2020 WL 3035798, at *4 (N.D. Cal. June 4, 2020) ("Those consumers' subjective opinions that Nestle's labeling is misleading, posted in the context of asking to join this lawsuit, are irrelevant to this Court's application of the reasonable consumer standard.").  The distinguishing fact between the two cases was that *Prescott* viewed the TCA as involving the situation where comments are posted (in part) in the context of asking the public to join a litigation, while *Adams* did not.  *See Adams*, 2020 WL 4196248, at *5 ("However, *Prescott* is inapplicable here because while Adams refers to evidence from the Top Class Actions website in the FAC, the evidence referred to by Adams are mere comments from the public in response to an article reporting on this lawsuit being filed.  These comments were not posted in the context of asking the public to join the lawsuit.").

Here, the Court observes that the cited remarks appear to be taken from a mention in the TCA publicizing the lawsuit and asking others to join.  Two of the three responses included in the FAC explicitly state "Add me to the class action" or "Add me please," indicating that these comments were posted in the context of asking the public to join the lawsuit.  This pushes the facts here closer to *Prescott* rather than *Adams*, so the Court finds that comments from the TCA website where users appear to be attempting to join the class action do not serve to inform on the issue of the reasonable consumer.

Additionally, the comments shed no light on the fundamental issue – which is whether the specific words on the former front labels of the Products misled the consumers into believing

the mustards were made in France.  The first commentator merely stated: "I just noticed that this mustard is made in Canada and was shocked.  I've been buying it for many years so of course I didn't look where it was made since it used to be made in France."  *See* FAC ¶ 44.  That individual does not say that he was misled by the front label into believing that the Product was made in France.  Rather, he was aware that the Product had previously been manufactured in France and continued making his purchases without thereafter looking to see where the Product was made.  Apparently, there was no change in mustard's taste or quality which triggered an earlier inquiry.  The second commentator simply says: "yes i [sic] feel deceived, i [sic] thought the product was made in france [sic]."  *Id.*  Again, there is no explanation as to why he felt deceived or why he thought the Product was made in France.  The third comment solely declares "I love this mustard, never thought it was from Canada!"  *Id.*  Aside from being a rousing endorsement of the Maille condiment, the comment fails to indicate that the speaker ever believed the mustard was made in France or the reasons for that assumption.

For the above stated reasons, the comments taken from the TCA provide no assistance to Plaintiff's case.

#### iv.  *The Proposed Survey*

Plaintiff offers an outline and mock-up of his new proposed survey in his Offer of Proof.  *See* ECF No. 41, Exhs. 1-2.  The Court has reviewed the proposed survey and finds it inadequate to reasonably show whether Defendant's previous packaging and labeling would mislead a reasonable consumer.

The Court finds a number of issues with the proposed survey that prevent it from accurately assessing the behavior that would be expected of a reasonable consumer in the relevant situation.  First, the survey fails to limit itself to the appropriate category of reasonable consumers for whom the inquiry must be focused.  The relevant group would be purchasers of mustards whose purchase decision would be substantially dependent upon the country where the mustard was made.  An underlying assumption of Plaintiff's claims is that there are reasonable consumers who desire to purchase mustards made in France and would pay a premium price only for such mustards.  Culver alleges that he is one of those consumers.  Therefore, the respondents participating in the survey should be limited to persons whose mustard purchasing decisions are significantly dependent on the condiment's country of origin.  The proposed survey does not include such limitation.

While the survey attempts to limit the participants to persons who have purchased Maille brand mustards in the prior twelve months, that group would also not be an entirely relevant one. Again, Maille produces a variety of mustard products some of which are made in France and some of which are made in Canada.  The purchasers of Maille mustards that are made in France would never have been misled in regards to the allegations in this lawsuit and, hence, their responses would be irrelevant to the proper inquiry.  Additionally, many purchasers of Maille's mustard condiments may simply be loyal customers based upon flavor, whose buying preferences as to mustards are not dependent on country of origin inclinations.

As stated in the Dismissal Ruling, this Court did not find "sufficiently deceptive elements" on the front labels of the Products.  It therefore held that:

> As a result, the Court finds that a reasonable consumer would not be free to ignore the available information in the entirety of the products' containers.  Hence, if the consumer had a question as to the place where the mustard was made, he or she would be expected to examine the rear labels of the mustard bottles herein which would inform him or her that the item is a "Product of Canada."

*See* Dismissal Ruling at 23-24.  Plaintiff argues that the new survey is capable of showing both the front and back labels to participants, but only if the participant first confirms that they view the back labels when they are purchasing mustard condiment products.  *See* Offer of Proof, Exh. 1 ("Survey Outline") at 9, ECF No. 41-1 (including a question that asks "When you consider purchasing mustard condiment products, what information on the product packaging do you usually look at?  Please select all that apply.").  Plaintiff argues that this results in a more accurate reflection of how consumers shop in the real world, because research indicates that 90% of consumers make a purchase after only visually examining the front of the packaging without physically having the product in their hands.  FAC ¶ 52.  Plaintiff maintains that survey participants who answer that they in fact look at the back label will be shown the back label. Opp. at 10-11.

The Court disagrees with Plaintiff's methodology.  First, to support the proposed survey, Culver repeatedly refers in the FAC (*e.g.* at ¶ 52) and in his Opposition (*e.g.* at 7, 12) to "research [which] indicates that 90% of consumers make a purchase after only visually examining the front of the packaging without physically having the product in their hands." Plaintiff only cites to Jesper Clement, *Visual influence on in-store buying decisions: an eye-track experiment on the visual influence of packaging design*, 23 Journal of Marketing Management 917 (November 2007) ("Clement Article").  *See* FAC ¶ 52, n. 10.  However, the Clement Article

provides no such support for that contention.

Plaintiff did not attach the article to the FAC or to his any of his filed papers.  The Court has reviewed the report online and finds that it is irrelevant to this litigation.  First, the study is described as "[a]n eye-track experiment [that] was set up in a large Danish supermarket, where 61 people ranging in age from 20 to 63 (36 women and 25 men) participated . . . . and made a normal purchase, matching their daily needs."  *See* Clement Article, Journal of Marketing Management at 923.  That study is not particularly germane to the class of persons relevant to this action, *i.e.* California consumers who are shopping for mustards manufactured in France. Further, to the extent that the article was cited for the proposition that "90% of consumers make a purchase after only visually examining the front of the packaging without physically having the product in their hands" (*see* FAC ¶ 52), that finding was not actually made by Clement.  Rather, the 90% figure comes from another report only referenced in the Clement Article as "Urbany, Dickson and Kalapurakal 1996" and provides nothing else to determine the validity of the 90% claim.  Thus, there is no basis for accepting the 90% figure, to assume its accuracy, or to find that it has any application to this lawsuit.

In addition, the Court finds that Culver's proposed survey contains several errors that would make its results unreliable.  For example, the survey requires the participant to answer "When you consider purchasing mustard condiment products, what information on the product packaging they usually look at?"  *See* Offer of Proof, Exh. 2 ("Survey Mockup") at 16, ECF No. 41-2.  The only answers provided in the survey are: "Front product label," "Back product label," and "Neither the Front or Back."  *Id.*  The answer choices are obviously insufficient because there is no response for a participant who looks at *both* the front *and* back label.  Participants who rely on both the front and back label then must choose among choices that do not accurately reflect what their actions would be.  This will lead to skewed results because participants are only shown the back label if they choose the exclusive "Back product label" answer in the above question.  *See* Survey Outline at 15; Survey Mockup at 22-23.  Further, there may be circumstances where a consumer will only look at the front of the packaging and others where he or she will examine the entire container.  For example, if a customer is purchasing an item that he or she is very familiar with, there will be no need to examine anything other than the front of the package.  But if the customer is unfamiliar with the product or has a question about it (for example, is it gluten-free), one would expect that the consumer will look at various parts of the

container.

Furthermore, even if the survey participants indicate they view back labels, they are only shown the front of the Products by default. The participant must take an extra action to view the back of the product while completing the survey, which would again skew the results as not all participants might actually complete the extra action to view the back label. *See* Survey Mockup at 22-25 (showing the front of the product and forcing a user to click a link to view the back). The Court sees no reason why this extra action is necessary to view the back label. In addition, from the survey mockup, it was unclear if the participant would be able to read the text on the back label because of the size and quality of the image presented. *See* Survey Mockup at 25 (superimposing a picture of the back label on a product where the label is unclear). Additionally, the survey exclusively shows the front label when it actually prompts the user to answer where the mustard was made. *Id.* at 26-29. All these provisions are unreasonable impediments to viewing the back label of the Products, which would in turn negate the accuracy of the results of the survey.

Finally, the Court finds that, in the end, the new survey would still fail to provide Plaintiff with a basis for establishing the premise of his lawsuit, *i.e.* that the mere presence of the words "Paris," "Depuis 1747" and "Que Maille" on the front label of the Products would so mislead reasonable consumers into believing that the Products were made in France that they would purchase the Products based substantially upon that assumption without looking at the rear label, which would tell them precisely where the Products were made. The central question on the survey simply asks participants, after they are shown a number of images, where they believe the product was made and provides them with a list of a number of countries. It fails to ask the respondents essential follow-up questions such as "What is the basis for your belief?" or "Why did you choose [that particularly country]?" A number of respondents when shown a bottle of Dijon mustard may check off "France" simply because they assume that all Dijon mustards come from Dijon, France. Other respondents may select France because they are familiar with Maille mustards generally and are aware that some of them are made in France. Still others, may choose France merely because there are two words in French on the front label along with the word "Paris." None of those respondents' choices would constitute adequate support for Plaintiff's case herein.

In conclusion, upon further reflection, the Court concludes that no survey would remedy

the deficiencies in the original Complaint and the FAC as has already been pointed out  As observed above, the mere presence of two French words (which are simply prepositions) along with the proper names "Paris" and "Maille" (which all are either trademark terms and/or references to the Maille brand's history) cannot be deemed so misleading that a reasonable consumer would not be expected to examine the Products' rear label which plainly identifies Canada as the country where the mustard is made.  Even if some respondents in a survey were to say that they assumed that the Products were made in France from the referenced language on the former labels, that still would not be adequate to salvage the deficiencies of Culver's CLRA, FAL and UCL claims.[13]

## IV.    Conclusion

Based on the foregoing discussion and for reasons initially stated in the Dismissal Ruling (*see* ECF No. 36), the Court **GRANTS** the motion to dismiss.  Upon consideration of all the filings and the arguments of counsel, the dismissal will be *with prejudice*.

---

[13] For example, the Court notes that there is a brand of mustards called "French's."  It would be expected that some consumers who are shown the front packaging for French's Dijon mustard (and given a list of countries where the mustard could come from) might select France, because of the brand name and the type of mustard.  A survey which produces that result would not be a basis for concluding that the packaging is so misleading that the rear label (which states where the mustard is made) would not be deemed sufficient to avoid CLRA, FAL and UCL liability.  The law requires "more than a mere possibility" that the products "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Ebner*, 838 F.3d at 965.